AO 106 (Rev. 04/10) Application for a Search Warrant

# United States District Court
### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

The Premises Known as **19 Crabapple Lane, Lancaster, New York**;
The Premises Known as **310 Adams Street, Buffalo, New York**;
The Person of **Larry D. Jordan II**;
The Person of **Sutukh El, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington**; and
Information Associated with Accounts:
   **Larry.jordan@5stems.com** and
   **Accounting @5stems.com,**
   That are Stored at Premises Owned, Maintained, Controlled, or Operated by
Zoho Corporation.

**Case No. 20-MJ-** 125

## APPLICATION FOR SEARCH WARRANTS

I, a federal law enforcement officer or an attorney for the government, request four search warrants and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: See Attachments A-1, A-2, A-3, and A-4, each of which is attached hereto and incorporated by reference herein, located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized)*: Evidence, fruits, and instrumentalities pertaining to violations of Title 18, United States Code, Sections 1014, 1343, 1344, 1349, and 1957, as more fully set forth in Attachment B-1, which is attached hereto and incorporated by reference herein.

I, a federal law enforcement officer or an attorney for the government, request a fifth search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: See Attachment A-5, which is attached hereto and incorporated by reference herein, located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*: Evidence, fruits, and instrumentalities pertaining to violations of Title 18, United States Code, Sections 1014, 1343, 1344, 1349, and 1957, as more fully set forth in Attachment B-2, which is attached hereto and incorporated by reference herein.

The basis for each search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
   ☒ evidence of a crime;
   ☒ contraband, fruits of crime, or other items illegally possessed;
   ☒ property designed for use, intended for use, or used in committing a crime;
   ☐ a person to be arrested or a person who is unlawfully restrained.

Each search is related to violations of Title 18, United States Code, §§ 1014, 1343, 1344, 1349, and 1957 *[statutory violation(s)]*.

The application is based on these facts:

    ☒ continued on the attached sheet.
    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is
       requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.


_____
*Applicant's signature*

KATHLEEN A. GARVER
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION
*Printed name and title*


Sworn to before me and signed telephonically.

Date: September _____8_____, 2020

_____
*Judge's signature*

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

City and state:  Buffalo, New York

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR SEARCH WARRANTS

STATE OF NEW YORK    )
COUNTY OF ERIE         )      SS:
CITY OF BUFFALO )

      I, Kathleen A. Garver, being duly sworn, deposes and says:

### INTRODUCTION AND AGENT BACKGROUND

    1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since 2015.  The FBI is an agency within the United States Department of Justice, which is a department within the executive branch of the United States Government.  I am currently assigned to the Buffalo Field Office and to the White-Collar Crime Squad within that office.  My duties include the investigation of such offenses as bank fraud, investment fraud, money laundering, corporate fraud, mail fraud, wire fraud, public corruption, bankruptcy fraud, and other white-collar crimes.

    2.      I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

    3.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for warrants to search the following:

        a.   the premises known as 19 Crabapple Lane, Lancaster, New York, 14086, more fully described in Attachment A-1; and

        b.   the premises known as 310 Adams Street, Buffalo, New York, 14212, more fully described in Attachment A-2,

1

    c.  the person of LARRY D. JORDAN II ("LARRY JORDAN"), more fully described in Attachment A-3, and

    d.  the person of SUTUKH EL, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington ("SUTUKH EL"), more fully described in Attachment A-4

As discussed below, 19 Crabapple Lane and 310 Adams Street (hereinafter, "the Subject Premises") are the residences of, respectively, LARRY JORDAN and SUTUKH EL.

    4.    I also make this affidavit in support of an application for information associated with two email accounts that are stored at premises owned, maintained, controlled, or operated by Zoho Corporation, an internet portal and electronic mail company headquartered in Pleasanton, California.  The accounts to be searched are:

    a.  Larry.Jordan@5stems.com

    b.  Accounting@5stems.com

 (hereinafter the "the Subject Accounts") and are identified and described in the following paragraphs and in Attachment A-5.  This affidavit is made in support of an application for a search warrant, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), requiring Zoho Corporation to disclose to the government records and other information (including the content of emails) in its possession pertaining to the subscriber(s) or customer(s) associated with the Subject Accounts.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

    5.    This application seeks search warrants to search the places, persons, and accounts identified in Attachments A-1 – A-5, and to thereafter search for and seize the items more

particularly described in Attachments B-1 and B-2, attached hereto and incorporated herein by reference, including the search of all computers, cellular telephones and/or any other electronic devices located, and the seizure of all items in Attachments B-1 and B-2 that constitute evidence, contraband, fruits, and instrumentalities of violations 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1349 (Conspiracy to Commit Bank Wire Fraud and Bank Fraud), 18 U.S.C. § 1014 (False Statements to a Financial Institution), and 18 U.S.C. § 1957 (Engaging in a Monetary Transaction with Criminally Derived Property) (the "Subject Offenses").

6.      As set forth below there is probable cause to believe that evidence, fruits, and instrumentalities of violations of the Subject Offenses are located within or on the places, persons, and accounts identified in Attachments A-1 – A-5.

7.      I am familiar with the facts contained in this affidavit based upon my personal involvement in this investigation and information provided by other law enforcement agents. Because this affidavit is submitted for the limited purpose of obtaining search warrants, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to search the above referenced facilities.

**PROBABLE CAUSE**

**OVERVIEW OF THE PAYCHECK PROTECTION PROGRAM**

8.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through

a program referred to as the PPP.  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

9.      In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan must provide documentation in support of their payroll expenses.

10.      A PPP loan application must be processed by a participating lender.  If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

11.      PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

## OVERVIEW OF THE SCHEME AND IDENTIFICATION OF RELEVANT PARTIES

### *Overview of the Scheme*

12.    The scheme involves LARRY JORDAN's and SUTUKH EL's use of email, lenders' online PPP loan application processes, and financial institution funds-wiring processes, in order to fraudulently obtain PPP loan funds.  Specifically, LARRY JORDAN and SUTUKH EL conspired to and did submit at least eight materially misleading PPP loan applications and supporting documentation to SBA approved lenders.  Reliance on this false information caused at least one financial institution to send, through interstate wires, significant funds to LARRY JORDAN and SUTUKH EL.

### *Background on LARRY JORDAN and SUTUKH EL*

13.    LARRY JORDAN is a resident of Lancaster, New York.  Property records and surveillance conducted by law enforcement agents place LARRY JORDAN at 19 Crabapple Lane, Lancaster, New York (the "Crabapple Address").  According to records obtained from Tennessee's Department of Labor and Workforce Development ("TDL"), LARRY JORDAN's last reported wages from 5 Stems Inc[1] were in the second quarter of 2019 and he has received unemployment benefits from on or about October 25, 2019, until at least on or about May 6, 2020.

14.    SUTUKH EL is a resident of Buffalo, New York.  Property records and surveillance conducted by law enforcement place SUTUKH EL at 310 Adams Street, Buffalo, New York (the "Adams Street Address").[2]  SUTUKH EL uses the aliases "Hugo Hurt," and "Hugo Hurtington."

---

[1] In its filings with Wyoming's Secretary of State, 5 Stems Inc does not include a period after the Inc.

[2] With some PPP loan applications, a copy of SUTUKH EL's North Carolina driver's license with the address 9815 Sam Furr Road, Huntersville, North Carolina (the "North Carolina Address") was provided.

According to records obtained from TDL, SUTUKH EL's last reported wages from 5 Stems Inc were in the second quarter of 2019 and he has received unemployment benefits from on or about November 13, 2019, until on or about April 22, 2020.

15.     LARRY JORDAN and SUTUKH EL are brothers.

*Relevant Entities*

16.     5 Stems L.L.C. is a limited liability company that was incorporated in Indiana on or about June 18, 2013.  According to records obtained from Indiana's Secretary of State, LARRY JORDAN is the registered agent.  The address for the company's principal office and registered agent is 9780 Crosspoint Boulevard, Fisher, Indiana (the "Indiana Address").[3]

17.     5 Stems Inc is a cell tower installation and network maintenance corporation that was incorporated in Wyoming on or about February 21, 2019.  According to records obtained from Wyoming's Secretary of State, LARRY JORDAN is the registered agent and president/director. In certain loan applications and bank account opening records, SUTUKH EL is listed as the chief financial officer.

18.     Initially, 5 Stems Inc's principal office and mailing address was 5406 Broadway Street, Suite 62, Lancaster, New York (the "Broadway Address").  On or about April 29, 2019, LARRY JORDAN submitted an update form to change the principal and mailing address to 1331 Union Avenue, Suite 1000, Memphis, Tennessee (the "Tennessee Address").  The current address

---

[3] According to publicly available information, the Indiana Address appears to be the address for the hotel Staybridge Suites Indianapolis-Fishers.

for the corporation's registered agent is 5109 Frontier Mall Drive, Cheyenne, Wyoming (the "Wyoming Address").[4]

19.     5 Stems of Kentucky, L.L.C. is a corporation that was incorporated in Kentucky on or about March 14, 2014.  According to records obtained from Kentucky's Secretary of State, LARRY JORDAN is the registered agent.  The corporation dissolved on or about September 12, 2015 and was reinstated on or about May 12, 2020.  The application for reinstatement was signed by LARRY JORDAN on or about April 24, 2020.[5]  The corporation's principal address is 11711 Gateworth Way, Louisville, Kentucky (the "Louisville Address").[6]

20.     FLE LLC is a music and entertainment limited liability company that was incorporated in New York on or about April 3, 2014.  According to records obtained from New York's Department of State, SUTUKH EL is the registered agent.  The company's address is 1200 William Street, Suite 622, Buffalo, New York (the "William Street Address").[7]

21.     HHDonDeck is a corporation that was incorporated in Wyoming on or about December 2, 2019.  Per records obtained from Wyoming's Secretary of State, SUTUKH EL is the incorporator.  The corporation's principal address is the Wyoming Address, which, as stated above,

---

[4] According to publicly available information, the Wyoming Address appears to be the address for the hotel Staybridge Suites Cheyenne.  The Broadway Address appears to be the address for a U.S. post office.

[5] Two days after submitting the application for reinstatement, on or about April 26, 2020, a PPP loan application on behalf of 5 Stems Kentucky, L.L.C. was submitted to an SBA approved lender. That loan application is discussed in more detail below.

[6] According to publicly available information, the Louisville Address appears to be the address for the hotel Staybridge Suites Louisville-East.

[7] According to publicly available information, the William Street Address appears to be the address of a U.S. post office.

appears to be the address of the hotel Staybridge Suites Cheyenne.  The corporation's mailing address is the William Street Address, which, as stated above, appears to be the address of a U.S. post office.  On or about April 1, 2020, HHDonDeck was administratively dissolved because it did not have a registered agent.[8]

22.     Standard Ascension Towers Group Corp. ("Standard Ascension") is a corporation that was incorporated in New York on or about December 8, 2015.  According to records obtained from New York's Department of State, the registered agent is "Sir Larry Jordan".  The address for the corporation's principal office and registered agent is the Broadway Address, which, as stated above, appears to be the address for a U.S. post office.

*Other Relevant Entities*

23.     Bank 1 is a federally insured financial institution with headquarters in Memphis, Tennessee.[9]  Bank 1 is an approved SBA lender and received at least two PPP loan applications on behalf of the entities identified above.

24.     Lender 1 is a financial technology company with headquarters in Lehi, Utah.[10] Lender 1 participates in the PPP by receiving PPP loan applications and matching those PPP loan applications with potential SBA approved lenders.  Lender 1 received at least five PPP loan applications on behalf of the entities identified above.

---

[8] HHDonDeck has a social media presence, which includes music videos featuring what appears to be SUTUKH EL rapping under the alias "Hugo Hurt".

[9] Bank 1's servers are located in Texas, Missouri, and Tennessee.

[10] Lender 1's servers are located in Virginia and Ohio.

25.      Bank 2 is a bank holding company with headquarters in Birmingham, Alabama.[11] Bank 2 is a federally insured financial institution with branches throughout the South, Midwest, and Texas.

26.      Bank 3 is a federally insured financial institution with branches throughout the United States.

27.      Brokerage Firm 1 is a brokerage firm that offers an electronic trading platform for the trade of financial assets.  Brokerage Firm 1 is headquartered in Omaha, Nebraska.

**PROBABLE CAUSE**

28.      As described in detail below, there is probable cause to believe that LARRY JORDAN and SUTUKH EL conspired to and did transmit several materially fraudulent PPP loan applications to SBA approved lenders and thereafter used the PPP loan funds to make impermissible purchases.

***The First 5 Stems Inc PPP Loan Application to Bank 1***

29.      According to information and records obtained from Bank 1, in or around April 2020, a PPP loan application on behalf of 5 Stems Inc seeking approximately $605,333.33 in PPP loan funds was submitted to Bank 1.

30.      On or about April 2, 2020, Bank 1 received a PPP loan application on behalf of 5 Stems Inc via email from the email address **larry.jordan@5stems.com** ("Application 1").[12]

31.      On Application 1, LARRY JORDAN is listed as the primary contact and CEO and 100 percent owner of 5 Stems Inc.

---

[11] Bank 1's servers are located in Alabama.

[12] The phone number 716-715-0211 is listed in the signature block of the email transmitting Application 1.  According to phone records and recordings of phone calls to and from that phone number, LARRY JORDAN uses the telephone number 716-715-0211.

32.     The listed business address is the Tennessee Address and the listed business phone number is 866-602-0006.

33.     The Crabapple Address is listed as LARRY JORDAN's personal address and the email address **larry.jordan@5stems.com** is listed as the personal email address.

34.     Application 1 represented that 5 Stems Inc had 39 employees with an average monthly payroll of $242,133.33.   The applicant certified that the United States was *not* the principal place of residence for those employees. [13]

35.     Application 1 was signed in the name of LARRY JORDAN and dated April 2, 2020.

36.     LARRY JORDAN certified that the information provided in Application 1 as well as the information provided in all supporting documents and forms was true and accurate in all material aspects.

37.     LARRY JORDAN also certified that any funds disbursed to 5 Stems Inc would "be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments as specified under the Paycheck Protection Program Rule."   LARRY JORDAN further certified his understanding that "if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

---

[13] All PPP applicants must complete the "Paycheck Protection Program Borrower Application Form," which requires the applicant to provide basic information about the business and its payroll. All applicants must answer a series of questions in order to confirm that they qualify for a PPP loan.  Question Seven asks, "Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above?"  To qualify for a PPP loan, the United States must be the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation.

10

38.     On or about April 16, 2020, a Bank 1 employee sent an email requesting that 5 Stems Inc provide an IRS Form 940[14] for 2019 and an IRS Form 941[15] for Q1 2020 to complete the loan file.  On or about the same day, an email from the email address **accounting@5stems.com** sent an email to Bank 1 with an IRS Form 940 for 2019 and an IRS Form 941 for the first quarter 2020 attached.  The email was signed by "Tina Pham."[16]

39.     The submitted IRS Form 940 purported to show 5 Stems Inc's total payments to employees for 2019.  According to the IRS Form 940, 5 Stems Inc made $3,360,666 in payments to employees in 2019 and did not have employees in any other state except Tennessee.  The IRS Form 940 had LARRY JORDAN's signature and the title of CEO.  The date and the phone number of the signatory were left blank on the IRS Form 940.

40.     The submitted IRS Form 941 purported to show 5 Stems Inc's wages and federal payroll tax information for the first quarter of 2020.  According to the IRS Form 941, 5 Stems Inc had 194 employees and paid $870,280.89 in wages, tips, and other compensation in that period.

---

[14] IRS Form 940 is an official document that an employer files with the Internal Revenue Service ("IRS") to report its annual Federal Unemployment Tax Act ("FUTA") tax.  Together with state unemployment tax systems, the FUTA tax provides funds for paying unemployment compensation.  Most employers pay both federal and state unemployment tax.

[15] IRS Form 941 is an official document that an employer files with the IRS every quarter in order to report income taxes, Social Security taxes and Medicare taxes withheld from employees' paychecks.

[16] On or about August 19, 2020, a law enforcement agent posing as an employee with Bank 1 spoke with LARRY JORDAN.  On the call, LARRY JORDAN represented that Tina Pham works for 5 Stems Inc as an administrator and uses the email address **accounting@5stems.com**.  A review of the payroll register submitted with the 5 Stems Inc loan applications as well as records from TDL was conducted and Tina Pham was not listed as an employee.  Further, law enforcement did obtain records from New York State.  Those records show two individuals in the Buffalo area named Tina Pham.  Neither Tina Pham received wages from 5 Stems Inc.

11

The IRS Form 940 had LARRY JORDAN's signature and the title of CEO.  The date and the phone number of the signatory were left blank on the IRS Form 941.

41.     As part of the investigation, information was obtained from the IRS, which stated that 5 Stems Inc did not file an IRS Form 940 for 2019 or an IRS Form 941 for Q1 2020.[17]

42.     According to records from TDL, in the first quarter of 2019, 5 Stems Inc reported wages for only four employees, including LARRY JORDAN and SUTUKH EL.  In the second quarter of 2019, 5 Stems Inc reported wages for only nine employees, including LARRY JORDAN and SUTUKH EL.  TDL had no records for 5 Stems Inc for the third and fourth quarters of 2019 or any quarters of 2020. [18]

43.     On or about April 17, 2020, a Bank 1 employee sent another email to the email address **accounting@5stems.com** requesting payroll documentation for 2019.  The bank employee also asked for clarification as to why the number of employees listed on Application 1, which was 39, was different from the number of employees listed on the IRS Form 941, which was 194, and to confirm whether the United States was *not* the principal place of residence for those employees.

44.     That same day, in an email from the email address **accounting@5stems.com,** an individual wrote the following: "that was in error . . .  ALL employees are US based 39 was the

---

[17] According to the IRS, 5 Stems Inc did file IRS Form 941s for the first, second, and third quarters of 2019.  Records obtained from Bank 3 reveal that on or about May 26, 2020, 5 Stems Inc received two checks in the amount of $3,983.82 and $15,684.93, respectively from the United States Treasury.  The checks appear to be refunds for taxes paid by 5 Stems Inc in the first and second quarter of 2019.  The checks were deposited into a bank account in the name of 5 Stems Inc at Bank 3 that was opened on or about June 3, 2020.  LARRY JORDAN and SUTUKH EL are signatories on this account.

[18] TDL requires every employer in Tennessee to report its employees' wages for purposes of calculating unemployment taxes

current number of employees per COVID 19. we have 194 total will send updated form". The email was signed by "Tina Pham."

45.      Application 1 was not funded.

### The Second 5 Stems Inc PPP Loan Application to Bank 1

46.      On or about April 17, 2020, a new PPP loan application on behalf of 5 Stems Inc seeking approximately $605,333.33 in PPP loan funds was emailed to Bank 1 from the email address **accounting@5stems.com**.  The email was signed by "Tina Pham" ("Application 2").

47.      On Application 2, LARRY JORDAN is still listed as the primary contact, CEO, and 100 percent owner of 5 Stems Inc.

48.      The listed business address is the Tennessee Address and the business phone number as 866-602-0006.

49.      Lancaster, New York is listed as the personal address and the email address **larry.jordan@5stems.com** is listed as the personal email address.

50.      Application 2 represented that 5 Stems Inc had 194 employees with an average monthly payroll of $242,133.33.  (As stated above, Application 1 represented that 5 Stems Inc had 39 employees.)  Application 2 also certified that the principal place of residence for the entity's employees was the United States.  (As stated above, Application 1 represented that the United States was not the principal place of business for employees of 5 Stems Inc.)

51.      Application 2 was signed in the name of LARRY JORDAN and dated April 1, 2020.  (Application 2 was submitted on or about April 17, 2020.)

52.      LARRY JORDAN also certified that the information provided in Application 2 as well as the information provided in all supporting documents and forms was true and accurate in all material aspects.

13

53.     In support of Application 2, an email was sent to Bank 1 from the email address **accounting@5stems.com**, which included seven Excel spreadsheets purporting to be 5 Stems Inc's payroll register for 2019.

54.     The payroll register listed a total of 204 employees.  The employees were identified by first name only, a street address with no city, state or zip code, and a social security number.[19] All of the employees had the same start date of January 1, 2019.

55.     The spreadsheets revealed 13 instances where a purported employee had the same social security number as a different purported employee.  For example, an employee identified as "Virgil," a "CM" earning $21,000, had the same social security number as an employee identified as "David," a "climber" earning $16,000.

56.     In addition, although the purported IRS Form 940 for 5 Stems Inc stated all employees worked inside Tennessee, none of the street names associated with each 5 Stems Inc employee listed on the payroll register were located in Tennessee.

57.     Application 2 was approved and Bank 1 funded the loan in the amount of $605,200.

58.     On or about, April 22, 2020, the loan agreement documents for Application 2 were signed in the name of LARRY JORDAN.

59.     According to records obtained from Bank 1, the documents were signed using a mobile device from the Internet Protocol ("IP") address of 172.58.229.13, which belongs to T-Mobile.

---

[19] On the submitted payroll register, a redline went through a portion of each social security number.  By clicking edit text in Adobe PDF, law enforcement was able to remove the redline and view the entire social security number.

***Recorded Phone Calls Confirm LARRY JORDAN Submitted Application 2***

60.     On or about August 17, 2020, a member of the law enforcement team made a recorded telephone call to phone number 716-715-0211 and spoke with LARRY JORDAN about Application 2.  The law enforcement agent pretended to be a customer service representative with Bank 1.

61.     On the recording, LARRY JORDAN answered the phone and identified himself as "Dr. Jordan".  LARRY JORDAN confirmed that his email address is **larry.jordan@5stems.com** and his phone number is 716-715-0211.

62.     When asked about the PPP loan process, LARRY JORDAN stated: "[I]t's just the government sucks, and, you know, just the past 8 weeks and 12 weeks, they've been changing shit to the point where we was so skittish about spending any freaking money."

63.     LARRY JORDAN continued: "[W]e're still coming back slowly . . .  We probably won't be fully ramped up until, like, late November.  So, we've been pretty particular, like, what we're spending, how we're spending.  'Cause it's just been so confusing."

64.     LARRY JORDAN said that his accountant "Anthony" wanted to know whether the company could use the money for new hires and still have the loan be forgiven.

65.     When pressed for Anthony's contact information and last name, LARRY JORDAN told the law enforcement agent he could not remember Anthony's last name.[20]

---

[20] As noted above, LARRY JORDAN referred to his accountant as "Anthony" and not "Tina Pham" as suggested in the email correspondence sent to Bank 1 from the email address **accounting@5stems.com**.  In a subsequent recorded call, LARRY JORDAN was asked whether "Tina Pham" was his accountant.  LARRY JORDAN responded: "Yeah, yeah, yeah.  That's, um, that's, she works for us.  She's our . . . like our, um, yeah, yeah, yeah, um, she's one of our administrators.  So, yes."  LARRY JORDAN further stated: " . . . that's the one that I think that she [i.e., Tina Pham] was su...yeah, submitting."  Finally, LARRY JORDAN stated: "She's... She does all the...she does all the, um, payroll and all the other stuff that we do day to day, so."

66.     When asked how many employees the company has, LARRY JORDAN stated: "[W]e got two companies.  We got 5 Stems Incorporated and 5 Stems L.L.C.  So, we have about 74 employees.  And then the other company, it has like 125 employees . . . [W]e do cell phone towers."

67.     The number of employees provided by LARRY JORDAN, 74 and 125, respectively, was inconsistent with the number of employees provided in Application 1, which was 39 employees, and in Application 2, which was 194 employees.

68.     When asked whether 5 Stems Inc was able to pay its employees, LARRY JORDAN said: "Yes, we paid . . . we started paying some of them."

69.     LARRY JORDAN continued: "[I]t's pretty much our back office. That's it."  When asked how many people work in the back office, LARRY JORDAN stated: "Um, I'd say about ten percent."

### *Bank 1 Confirms LARRY JORDAN Spoke with Bank 1 Employees about Loan Forgiveness*

70.     Law enforcement spoke with employees from Bank 1 and obtained correspondence between LARRY JORDAN and a Bank 1 employee.

71.     On or about August 14, 2020, a Bank 1 employee sent an email asking whether the PPP loan funds had been spent, when the borrower might anticipate submitting a forgiveness application, and to ask how things were going.

72.     That same day, LARRY JORDAN responded to the email from the Bank 1 employee from the email address **larry.jordan@5stems.com**.  In the email, LARRY JORDAN responded, "Yes some have been spent but we can call u when?"

73.     The Bank 1 employee told law enforcement that on or about August 17, 2020, the employee spoke with LARRY JORDAN.  The Bank 1 employee contacted LARRY JORDAN at the telephone number 716-715-0211.

74.     According to notes taken by the Bank 1 employee, LARRY JORDAN told the employee that he had used some of the funds, but that he is looking to hire employees back and start using the money.  LARRY JORDAN also indicated that he planned to apply to have the PPP loan forgiven.

### LARRY JORDAN Wires the PPP Loan Funds from Application 2 to SUTUKH EL

75.     On or about April 22, 2020, LARRY JORDAN authorized the wire transfer of approximately $605,200 in PPP loan funds from Application 2 to bank account number 0201308971 in the name of 5 Stems Inc at Bank 2 (the "5 Stems Inc Account").[21]

76.     On or about April 22, 2020, LARRY JORDAN authorized the wire transfer of approximately $605,200 in PPP loan funds from Application 2 to a bank account with the account number ending in 8971 in the name of 5 Stems Inc at Bank 2 (the "5 Stems Inc Account").[22]

77.     According to records obtained from Bank 2, SUTUKH EL is the sole signatory for the 5 Stems Inc Account.  The phone number associated with the account is 716-331-4350.[23]

---

[21] Prior to this deposit, the balance of the 5 Stems Inc Account was approximately $21,500.  After April 22, 2020, the 5 Stems Inc Account had no other deposits.

[22] Prior to this deposit, the balance of the 5 Stems Inc Account was approximately $21,500.  After April 22, 2020, the 5 Stems Inc Account had no other deposits.

[23] Bank 2 also provided law enforcement with a number of recorded phone calls between the bank and the telephone number 716-331-4350.  In most of these recorded calls, the individual calling the bank identified himself as SUTUKH EL.  In one of the recorded calls, SUTUKH EL told the bank employee that SUTUKH EL is the CFO of 5 Stems Inc and that his brother is the CEO.  In another call, SUTUKH EL speculated that he may have listed LARRY JORDAN on one of the business accounts for 5 Stems Inc.

78.     Records from Bank 2 also showed when a user logged into the bank's online system to access the 5 Stems Inc Account.

79.     Law enforcement examined the logins into the 5 Stems Inc Account from on or about April 22, 2020 (the day of the PPP wire transfer).  Those records show numerous login attempts, including some from an iPhone with the IP address 174.224.136.30.  Records obtained in the investigation reveal that this IP address is owned by Verizon and associated with the telephone number 716-331-4350 (the number used by SUTUKH EL to call Bank 2).[24]

80.     Records from Bank 2 also show separate logins into the 5 Stems Inc Account on or about April 22, 2020 from the IP address 98.4.51.196.  Records obtained in the investigation reveal that this IP address is registered to the Crabapple Address, which is LARRY JORDAN's residence.

81.     Records from Bank 2 also show separate logins into the 5 Stems Inc Account on or about April 22, 2020 from the IP address 67.241.169.41.[25]  Records obtained reveal that this IP address is registered to a residence in Lancaster, which is owned by LARRY JORDAN's and SUTUKH EL's father.

82.     Law enforcement also examined telephone records to identify telephone calls between telephone numbers 716-331-4350 (used by SUTUKH EL) and 716-715-0211 (used by LARRY JORDAN).

83.     Telephone records show that on or about April 22, 2020 (*i.e.,* the day the PPP loan was funded), these two telephone numbers communicated at least five times.  The same records

---

[24] Records obtained reveal that this IP address is registered to an individual in Buffalo, New York.

[25] According to the bank records, some of these logins were done from an iPhone and others were done from a computer using Windows Operating System.

showed that between on or about April 1, 2020, through on or about July 23, 2020, these telephone numbers called each other at least 440 times.

### LARRY JORDAN and SUTUKH EL Spend Approximately $300,000 in PPP Loan Proceeds for Expenses Unrelated to 5 Stems Inc[26]

84.     Bank records for the 5 Stems Inc Account reveal that both LARRY JORDAN and SUTUKH EL received proceeds from Bank 1 and used those funds for primarily non-business-related expenditures and not for the permitted uses under the PPP.

85.     Of the approximately $605,000 in loan proceeds, approximately $84,800 was used to acquire securities through Brokerage Firm 1.  An additional $42,665 of the loan proceeds was withdrawn in cash, approximately $23,446 was spent on home improvements such as landscaping, and approximately $14,348 was used to acquire a vehicle.

*Wires to FLE LLC and Brokerage Firm 1*

86.     One day after receiving the PPP loan funds pursuant to Application 2, on or about April 23, 2020, approximately $100,000 was wired from the 5 Stems Inc Account to a bank account with account number ending in 1512 at Bank 3 in the name of FLE LLC with the memo "investment" (the "FLE Account")

87.     The FLE Account is the name of a company owned by SUTUKH EL.  According to bank records from Bank 3, SUTUHK EL is the sole signatory on the FLE Account and the address associated with the account is the Adams Street Address.

88.     On or about April 24, 2020, and on or about May 1, 2020, $4,800 and $80,000, respectively, were wired from FLE Account to a bank account with account number ending in 3054 at Brokerage Firm 1 in the name of SUTUKH EL (the "Brokerage Firm 1 Account").

---

[26] As of September 4, 2020, approximately $286,087 in PPP loan funds from Application 2 remained in the 5 Stems Inc Account.

*Purchase of Vehicle*

89.     On or about April 29, 2020, approximately $14,348 was wired from the 5 Stems Inc Account to Parkview Auto Sales.

90.     Records obtained from Parkview Auto Sales show that on or about April 27, 2020, a 2011 Chevrolet Silverado was purchased and registered to a relative of LARRY JORDAN and SUTUKH EL.

91.     On or about August 20, 2020, while conducting surveillance, law enforcement observed the 2011 Chevrolet Silverado in the vicinity of the Crabapple Address.

*Wires to HHDonDeck Corp.*

92.     On or about May 26, 2020 and on or about June 15, 2020, approximately $40,000 was wired from the 5 Stems Inc Account to a bank account with account number ending in 1713 at Bank 3 in the name of HHDonDeck (the "HHDonDeck Account").  The memo for both transfers was "5 Stems Inc Payroll."

93.     According to bank records, SUTUKH EL is the sole signatory on the HHDonDeck Account and the address associated with the account is the Adams Street Address.

94.     Records for the HHDonDeck Account did not reveal any expenditures that would suggest the funds were used for payroll purposes.

*Transfers to LARRY JORDAN's Personal Bank Account*

95.     Between on or about May 26, 2020 and on or about June 5, 2020, approximately $15,000 was wired from the 5 Stems Inc Account to a bank account with account number ending in 6993 at Bank 3 in the name of LARRY JORDAN (the "LARRY JORDAN Account").

96.     According to bank records, LARRY JORDAN is the sole signatory on this account and the address associated with the account is the Crabapple Address.

97.     On or about June 16, 2020, approximately $20,000 was transferred from the HHDonDeck Account to the LARRY JORDAN Account via teller transaction.

98.     Law enforcement obtained photographs from the bank documenting this teller transaction.  Based on several images obtained of LARRY JORDAN and SUTUKH EL during the course of the investigation, the individuals in the bank photographs appear to be LARRY JORDAN and SUTUKH EL.

99.     Records for the LARRY JORDAN Account were reviewed and there do not appear to be any expenditures that would suggest the $20,000 in PPP loan funds were used for payroll purposes.

*Cash Withdrawals by SUTUKH EL*

100.     On or about May 14, 2020, and on or about May 27, 2020, there were two teller cash withdrawals in the amounts of $4,000 and $7,500 from the FLE Account.

101.     Law enforcement obtained photographs from the bank documenting these two withdrawals.  The individual in both photographs appears to be SUTUKH EL.

102.     The investigation identified recent videos posted on YouTube that include SUTUKH EL.  One video, called "Hugo Hurt – Official BlackRock Freestyle Video," was posted or about June 14, 2020.  Throughout the video, SUTUKH EL is holding large amounts of what appear to be crisp $100 bills.  This video was posted on or about June 14, 2020, which is one month after SUTUKH EL withdrew $4,000 in cash from the FLE LLC account ending in 1512 and just over two weeks after SUTUKH EL withdrew $7,500 in cash from the FLE LLC account ending in 1512.

103.     In the video, SUTUKH EL is holding a large amount of what appear to be clean and crisp $100 bills.  The money is spread out in a fan in SUTUKH EL's hand.

104.    SUTUKH EL is wearing a red shirt that says HHD, which is the logo for HHDonDeck.  A similar logo can be seen on clothing worn by SUTUKH EL in surveillance footage from the ATM withdrawals described above.  A similar logo is also visible on surveillance footage from on or about June 16, 2020, when $20,000 was transferred from the HHDonDeck Account to the Jordan Account.

105.    In another section of the video, SUTUKH EL is sitting on a blue leather sofa holding a large amount of what appear to be clean and crisp $100 bills.  In front of SUTUKH EL appears to be a Pitbull dog.  On or about August 20, 2020, law enforcement conducted surveillance on the Adams Street Address and observed SUTUKH EL walking what appeared to be a Pitbull dog on Adams Street.

### LARRY JORDAN and SUTUKH EL Submitted Additional Fraudulent PPP Loan Applications

106.    Between on or about April 14, 2020 and on or about April 26, 2020, LARRY JORDAN and SUTUKH EL conspired to and did submit at least six other fraudulent PPP loan applications on behalf of five different entities.  The following chart summarizes these loans:

| Application Number | Name of Business | Approx. Amount Sought | Lender | Approx. Date | Status |
|---|---|---|---|---|---|
| 3 | 5 Stems of Kentucky, L.L.C. | $4,978,700 | Lender 1 | April 26, 2020 | Unfunded |
| 4 | 5 Stems L.L.C. | $425,416 | Bank 1 | April 14, 2020 | Unfunded |
| 5 | 5 Stems L.L.C. | $425,400 | Lender 1 | April 15, 2020 | Unfunded |
| 6 | FLE LLC | $185,000 | Lender 1 | April 25, 2020 | Unfunded |
| 7 | HHDonDeck | $81,900 | Lender 1 | April 25, 2020 | Unfunded |
| 8 | Standard Ascension | $287,100 | Lender 1 | April 25, 2020 | Unfunded |

107.    Each of these loans listed either LARRY JORDAN or SUTUKH EL as the primary contact.   Likewise, certain identifying and contact information within these six applications matches the information provided in Application 1 and Application 2 (submitted in the name of 5 Stems Inc) or was the same as another application submitted in the name of another business.   The chart below summarizes some of the information provided in these applications:

| Loan Number | Primary Contact | Number of Employees | Avg. Monthly Payroll | Business Address | Telephone Number | Applicant's Primary Address | IP Address Used to Submit Application |
|---|---|---|---|---|---|---|---|
| 3 | LARRY JORDAN | 330 | $1,991,500 | Tennessee Address | 716-715-0211 | Crabapple Address | Crabapple IP |
| 4 | SUTUKH EL | 59 | $170,166 | Indiana Address | 866-602-0006 | North Carolina Address | 136.143.188.12[27] |
| 5 | SUTUKH EL | 59 | $170,166 | Indiana Address | 866-602-0006 | North Carolina Address | Crabapple IP |
| 6 | LARRY JORDAN | 24 | $74,220 | Williams Street Address | 716-603-6000 | North Carolina Address | Crabapple IP |
| 7 | SUTUKH EL | 11 | $32,794 | Williams Street Address | 716-603-6000 | North Carolina Address | Crabapple IP |
| 8 | LARRY JORDAN | 19 | $114,855 | Depew, New York | 716-715-0211 | Crabapple Address | Crabapple IP |

---

[27] Records obtained reveal that this IP address is owned by ZoHo Corporation.  ZoHo Corporation is the host for the email addresses **larry.jordan@5stems.com** and **accounting@5stems.com**.

108.    A number of emails were sent between the lenders and applicants concerning these applications.  For example, the email address **accounting@5stems.com** was used to provide IRS forms in support of Application 1.  The email was signed by "Tina Pham".  The same email address was used to submit Application 2 and the payroll register in support of Application 2.  That email address was also listed as personal email address for the primacy contact (SUTUKH EL) on Application 4. [28]

109.    Further indicia of fraud were identified.

110.    For example, as supporting documentation for the reported payroll, purported IRS Forms 940 and IRS Forms 941 were submitted along with all of the applications except for Application 4 and Application 5 (5 Stems L.L.C.). [29]  Information obtained from the IRS confirms that it has no records of the IRS Forms 940 and IRS Forms 941 submitted in support of those six applications. [30]

111.    Similarly, in support of each application, the applicants submitted Excel spreadsheets purporting to be each entity's payroll register for 2019.  The payroll registers had the exact same format: the employees were identified by first name only, a street address with no city, state or zip code and a social security number.  A redline went through a portion of each social security number.  All of the employees had the same start date of January 1, 2019.

---

[28] Application 4 originally answered "No" in response to the question whether all of the applicant's employees reside in the United States.  This same answer was provided on Application 1 before being corrected on Application 2.

[29] In support of Application 4 and Application 5, an IRS Form W-3 for 2019 was submitted.  The IRS Form W-3 was not signed or dated.  At this stage in the investigation, law enforcement has not obtained information from the IRS as to whether 5 Stems L.L.C. filed an IRS Form W-3 for 2019.  The investigation is ongoing.

[30] Information from the IRS also confirms that 5 Stems L.L.C. did not file an IRS Form 940 or IRS Form 941 in 2019 or 2020.

112.    A comparison of these payroll registers revealed that 142 employees listed on the payroll register submitted with Application 1 and Application 2 (5 Stems Inc) are also listed on the payroll register submitted with Application 3 (5 Stems of Kentucky, L.L.C.).  Similarly, 58 of the employees listed on the payroll registers submitted with Application 4 and Application 5 (5 Stems L.L.C.) are also listed on the payroll register submitted with Application 3.  Likewise, all of the employees listed on the payroll registers submitted with Application 6, Application 7, and Application 8 are also listed on the payroll register submitted with Application 3.

### Evidence Likely to be Present in the Subject Premises

113.    The requested warrants would authorize searches of the premises identified in Attachment A-1 and Attachment A-2, including all structures (such as detached garages and trailers) on the premises and all electronic devices contained in or upon them.  The requested warrants would also authorize searches of the persons of LARRY JORDAN and SUTUKH EL. As discussed above, LARRY JORDAN currently resides at 19 Crabapple Lane, Lancaster, New York, and SUTUKH EL currently resides at 310 Adams Street, Buffalo, New York.

114.    As described above, the evidence in this investigation consists largely of electronically stored information, such as fraudulent documents and records of communications with PPP lenders and financial institutions.  Based on my training and experience, I know that this type of information may be—and frequently is—stored on small and readily portable devices, such as laptop computers, flash drives and external hard drives, and mobile devices, like cell phones and smartphones.  For example, as described in paragraphs 78 through 81, bank records show that a user logged into Bank 2's online system numerous times on April 22, 2020 (*i.e.*, the day the PPP loan was funded) using both an iPhone and a computer using Windows Operating System.  All of

these items—in particular, mobile devices—can readily be concealed and secreted upon one's person or in one's home.

115.    As further discussed above, five fraudulent PPP loan applications were submitted using an IP address registered to 19 Crabapple Lane, Lancaster, New York.  Likewise, on the day the PPP loan for 5 Stems Inc was funded, a user logged into the 5 Stems Inc Account using that same IP address.    Finally, a review of LARRY JORDAN's bank records shows home improvement-related expenses after the PPP loan was funded.  Therefore, there is probable cause to believe that evidence, fruits, and instrumentalities of the Subject Offenses will be found at 19 Crabapple Lane, Lancaster, New York.

116.    Although SUTUKH EL listed a North Carolina address on several PPP loan applications, for the reasons stated above, there is probable cause to believe that SUTUKH EL in fact lives at 310 Adams Street, Buffalo, New York.  As discussed above, recent surveillance has shown SUTUKH EL to live at 310 Adams Street, and a recent rap video featuring SUTUKH EL was filmed in Buffalo, New York.[31]    There is also probable cause to believe that evidence, fruits, and instrumentalities of the Subject Offenses will be found at 310 Adams Street, Buffalo, New York.  For example, as described in paragraph 79, an iPhone associated with the telephone number 716-331-4350 (the number used by SUTUKH EL to call Bank 1) was used to login to the 5 Stems Inc Account numerous times on April 22, 2020.  Based on my training and experience, a person's cell phone is likely to be either on their person or in their home.  Further, 310 Adams Street is the listed address of (1) the FLE Account, whose sole signatory is SUTUKH EL, and which received

---

[31] For example, the video is entitled "BlackRock Freestyle," which appears to be a reference to the Black Rock neighborhood of Buffalo; some scenes were filmed in front of a home on Parade Street in Buffalo; and one shot shows a Niagara Frontier Transit Authority sign for the Black Rock Riverside Transit Hub.

approximately $100,000 in PPP loan funds one day after the PPP funds were disbursed; and (2) the HHDonDeck Account, which received approximately $40,000 of PPP loan funds. Finally, recent surveillance has shown renovations at 310 Adams Street, Buffalo, New York and bank records described in this affidavit show home improvement-related expenditures.

## **TECHNICAL TERMS**

117.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c.  Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

**COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

118.    As described above and in Attachment B-1, this application seeks permission to search for records that might be found on the Subject Premises, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media.  Thus, the warrants applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

119.    *Probable cause.*  I submit that if a computer or storage medium is found in the Subject Premises, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

      a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

      b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e.  Based on actual inspection of other evidence related to this investigation, such as the documents submitted in support of PPP applications, I am aware that computer equipment was used to generate documents used in the fraud scheme.  There is reason to believe that there is a computer system currently located on the Subject Premises.

120.  *Forensic evidence.*  As further described in Attachment B-1, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the Subject Premises because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a

29

file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the government to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the

30

computer owner.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password

protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

121. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an

32

image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c.   Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

122.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

123.   Because several people may share the Subject Premises as a residence, it is possible that the Subject Premises will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## BACKGROUND CONCERNING ZOHO CORPORATION AND EMAIL

124.   I anticipate executing the warrant to Zoho Corporation under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Zoho Corporation to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B-2. Upon receipt of the information described in Section I of Attachment B-2, government-authorized persons will review that information to locate the items described in Section II of Attachment B-2.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law

34

enforcement officer is not required for the service or execution of this warrant on Zoho Corporation.

125.    In my training and experience, and based on a review of publicly-available information, I have learned that Zoho Corporation provides a variety of online services, including electronic mail ("email") access to businesses, which allows a business to create a domain name (such as "@5stems.com") and custom email addresses using that domain name, such as the email accounts listed in Attachment A-5.  Based on information contained in Zoho Corporation's privacy policy (available at https://www.zoho.com/privacy.html), when a user "sign[s] up for an account to access one or more of [Zoho's] services, [Zoho] asks for information like [the user's] name, contact number, email address, company name and country to complete the account signup process." Further, some of Zoho's mobile applications have access to the user's camera, call history, contact information, photo library, and other information stored on his or her mobile device. (A user may elect to disable these features.) Therefore, the computers of Zoho Corporation are likely to contain stored electronic communications (including retrieved and unretrieved email for Zoho Corporation subscribers) and information concerning subscribers and their use of Zoho Corporation services, such as account access information, email transaction information, and account application information.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Likewise, evidence of who was using an email account may be found in address books, contact lists, email in the account, and attachments to emails, including pictures and files.  Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

126.    In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

127.    In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

128.    As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the government to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the

36

information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## **CONCLUSION**

129.     Based on the foregoing, I believe there is probable cause to believe that LARRY JORDAN and SUTUKH EL, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington, have committed violations of the Subject Offenses and that evidence, fruits, and instrumentalities of those violations will be found in and on the persons, locations, and accounts identified in

Attachments A-1 – A-5.  I therefore request that the Court issue the attached search warrants authorizing searches of the persons and locations identified in Attachments A-1 – A-4 for the items identified in Attachments B-1.  I also request that the Court issue the attached search warrant authorizing searches of the accounts identified in Attachment A-5 for the items identified in Attachment B-2.

## **REQUEST FOR SEALING**

130.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrants, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

KATHLEEN A. GARVER
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to and subscribed before me, telephonically,
this ___8th__ day of September 2020

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE

39

**ATTACHMENT A-1**

The premises to be searched is 19 Crabapple Lane, Lancaster, New York ("the Subject Premises"). The residence is a two-story family home with cream colored siding and maroon shutters and is situated on a corner lot.  The number "19" is displayed in black on one of the front porch posts.



## ATTACHMENT A-2

The premises to be searched is 310 Adams Street, Buffalo, New York ("the Subject Premises"). The residence is a two-story family home with white siding and black trim.  The numbers "310" are displayed on the siding to the left of the front door of the residence. The residence includes two detached garages as well as the trailer picture below.





**ATTACHMENT A-3**



Name: Larry D. Jordan II
Date of Birth: 9/28/1977
Height: 5'5"
Hair: Black
Eyes: Hazel

**ATTACHMENT A-4**



Name: Sutukh El, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington
Date of Birth: 09/03/1982
Height: 5'7"
Hair: Black
Eyes: Brown

**ATTACHMENT A-5**

**Property to Be Searched**

This warrant applies to information associated with the following email accounts, each is which is stored at premises owned, maintained, controlled, or operated by Zoho Corporation, a company headquartered at 4141 Hacienda Dr., Pleasanton, California 94588:

Larry.Jordan@5stems.com

Accounting@5stems.com

**ATTACHMENT B-1**

**ITEMS TO BE SEARCHED FOR AND SEIZED**

All records, information, and physical evidence, in whatever form (including the contents of all wire and electronic communications, attachments, stored files, print outs, and header information) that contain evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud and Bank Fraud), 18 U.S.C. § 1014 (False Statements to a Financial Institution), and 18 U.S.C. § 1957 (Engaging in a Monetary Transaction with Criminally Derived Property), including:

1.      All communications, correspondence, documents, or records related to loans under the Paycheck Protection Program ("PPP"), including, as examples, all loan applications, supporting documentation, communications with lenders, bank records designated as the accounts to receive proceeds, and any other bank documentation;

2.      All records and documents related to 5 Stems Inc, 5 Stems L.L.C., 5 Stems of Kentucky, L.L.C.; FLE LLC; and HHDonDeck (hereinafter "the Entities"), including payroll documentation, tax forms, bank account information, financial statements, mail (whether opened or unopened), and communications involving officers, employee, agents, affiliates, contractors, customers, and suppliers of the Entities;

3.      All communications, in whatever form, between Larry D. Jordan II and Sutukh El, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington;

4.      U.S. currency;

5.      Payroll records, time cards, personnel schedules, training records, and all other records identifying all individuals employed by the Entities;

6.      All federal and state personal or corporate tax records to include Internal Revenue Service Forms 1040, 1099, W-2, W-3, 940, 941, and 944 for the Entities for tax year 2018 to the present;

7.      All financial records related to the Entities, including, as examples, ledgers, statements, checkbooks, and deposit tickets;

8.      The identities of persons who collaborated, conspired, or assisted (knowingly or unknowingly) in the submission and/or creation of PPP applications and related documents, including all communications between such persons and Larry D. Jordan II and/or Sutukh El, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington;

9.      Evidence showing who completed and submitted PPP applications (including all supporting documentation) on behalf of the Entities;

10.     Evidence showing the state of mind of the person(s) who submitted PPP applications on behalf of the Entities;

11.     All items purchased with funding provided by a PPP loan;

12.     Documents and records of personal property reflecting the identity of persons occupying, possessing, residing in, owning, frequenting or controlling the premises to be searched or property therein, including keys, rental agreements and records, property acquisition records, utility bills and receipts, photographs, answering machine tape recordings, telephone, vehicle and/or vessel records, canceled mail envelopes,

correspondences, safety deposit records, canceled checks, credit card records, travel documents, and personal identification documents;

      13.    All electronic devices, computers, or storage media (including, but not limited to, desktop computers, laptops, cellular phones, smartphones, and tablets) that are, or reasonably appear to be, within the custody and control of the Entities, Larry D. Jordan II and Sutukh El, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington.   The following items may be seized and searched for all records and information listed in paragraphs 1-12, and for any items identified in paragraph 14:

      a.  Computer hardware, meaning all computer equipment owned or used by the Entities, Larry D. Jordan II, and Sutukh El, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington. Included within the definition of computer hardware are electronic devices capable of data processing (such as central processing units, laptop or notebook or netbook or tablet computers, personal digital assistants, gaming consoles, and wireless communication devices to include cellular telephone devices capable of internet access); peripheral input/output devices (such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media); related communications devices (such as modems, wireless routers, cables and connections); storage media, defined below; and security devices, also defined below.

      b.  Computer software owned or used by the Entities, Larry D. Jordan II, and Sutukh El, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington, meaning all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

      c.  Computer related documentation, meaning all written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

      d.  Data security devices, meaning any devices, programs, or data whether themselves in the nature of hardware or software that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer related documentation, or electronic data records. Such items include user names and passwords; data security hardware (such as encryption devices, chips, and circuit boards); data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or date or to otherwise render programs or data into usable form.

      e.  All storage media owned or used by the Entities, Larry D. Jordan II, and Sutukh El, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington, capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and backing up electronic data. Included within this paragraph is all information stored in the form of electronic, magnetic, optical, or other coding

on computer media or on media capable of being read by a computer or computer related equipment, such as fixed hard disks, external hard disks, removable hard disks (including micro drives), floppy diskettes, compact disks (CDs), digital video disks (DVDs), tapes, optical storage devices, laser disks, thumb drives, iPods, digital cameras, memory cards (e.g. CF or SD cards), Xboxes, flash drives, or other memory storage devices. This also includes areas with digital storage capability on devices such as printers, scanners, wireless routers, etc.

 f. Routers, modems, and network equipment used to connect computers to the Internet.

 14. For all computer or storage medium whose seizure is authorized by this warrant, and all computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "Computer"):

 a. Evidence of who used, owned, or controlled the Computer at the time the things described in this Attachment were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

 b. Evidence of software that would allow others to control the Computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

 c. Evidence of the lack of such malicious software;

 d. Evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to applications for PPP loans;

 e. Evidence indicating the computer user's state of mind as it relates to applying for, and spending funds obtained from, PPP loans;

 f. Evidence of the attachment to the Computer of other storage devices or similar containers for electronic evidence;

 g. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Computer;

 h. Evidence of the times the Computer was used;

 i. Passwords, encryption keys, and other access devices that may be necessary to access the Computer;

 j. Documentation and manuals that may be necessary to access the Computer or to conduct a forensic examination of the Computer;

 k. Records of or information about Internet Protocol addresses used by the Computer;

 l. Records of or information about the Computer Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

 m. Contextual information necessary to understand the evidence described in this Attachment.

15.     This warrant authorizes the executing agents to take entry and exit photographs, as well as photographs of all seized items and evidence.  Further, executing agents are authorized to photograph all evidence, fruits, and instrumentalities of the crimes listed above that are immovable or which cannot be physically seized in a reasonable manner. Such evidence includes, but is not limited to, plants, landscaping, decking, concrete, and other home improvements and renovations in any form.

**Definitions**

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes all physical objects upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

During the execution of the search of the Premises described in Attachments A-1 and A-2, and/or the Subject Persons described in Attachments A-3 and A-4, law enforcement personnel are authorized to press the fingers, including thumbs, or present the irises or faces of individuals found at the Subject Premises to the appropriate biometric sensor on locked electronic devices for the purpose of attempting to unlock the device via a biometric authentication feature in order to search the contents as authorized by this warrant.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, investigative agencies may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

During the execution of this search warrant, if the executing agents determine that forensic searches and analysis of any Computer for evidence of the crimes identified above would be more appropriately made in a controlled environment, the Computer may be removed and examined at a laboratory location.

# ATTACHMENT B-2

## Particular Things to be Seized

## I.     Information to be disclosed by Zoho Corporation (the "Provider")

To the extent that the information described in Attachment A-5 is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that have been deleted but are still available to the Provider, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), on or before 14 days, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A-5:

a.     The contents of all emails associated with the accounts from March 1, 2020 through and including the date on which this warrant is served, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     The types of service utilized;

d.     All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

e.     All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 days from the date on which this warrant is served on the Provider.

## II.    Information to be searched for and seized by the government

All records, information, and physical evidence, in whatever form (including the contents of all wire and electronic communications, attachments, stored files, print outs, and header information) that contain evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1349 (Conspiracy to Commit Bank Wire Fraud and Bank Fraud), 18 U.S.C. § 1014 (False Statements to a Financial Institution), and 18 U.S.C. § 1957 (Engaging in a Monetary Transaction with Criminally Derived Property), including:

1.    All communications, correspondence, documents, or records related to loans under the Paycheck Protection Program ("PPP"), including, as examples, all loan applications, supporting documentation, communications with lenders, bank records designated as the accounts to receive proceeds, and any other bank documentation;

2.    All records and documents related to 5 Stems Inc, 5 Stems L.L.C., 5 Stems of Kentucky, L.L.C.; FLE LLC; and HHDonDeck (hereinafter "the Entities"), including payroll documentation, tax forms, bank account information, financial statements, mail (whether opened or unopened), and communications involving officers, employee, agents, affiliates, contractors, customers, and suppliers of the Entities;

3.    All communications, in whatever form, between Larry D. Jordan II and Sutukh El, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington;

4.    Payroll records, time cards, personnel schedules, training records, and all other records identifying all individuals employed by the Entities;

5.    All federal and state personal or corporate tax records to include Internal Revenue Service Forms 1040, 1099, W-2, W-3, 940, 941, and 944 for the Entities for tax year 2018 to the present;

6.    All financial records related to the Entities, including, as examples, ledgers, statements, checkbooks, and deposit tickets;

7.    The identities of persons who collaborated, conspired, or assisted (knowingly or unknowingly) in the submission and/or creation of PPP applications and related documents, including all communications between such persons and Larry D. Jordan II and Sutukh El, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington;

8.    Evidence showing who completed and submitted PPP applications (including all supporting documentation) on behalf of the Entities;

9.    Evidence showing the state of mind of the person(s) who submitted PPP applications on behalf of the Entities;

10.    All items purchased with funding provided by a PPP loan;

11.    Documents and records of personal property reflecting the identity of persons occupying, possessing, residing in, owning, frequenting or controlling the premises to be searched or property therein, including keys, rental agreements and records, property acquisition records, utility bills and receipts, photographs, answering machine tape recordings, telephone, vehicle and/or vessel records, canceled mail envelopes, correspondences, safety deposit records, canceled checks, credit card records, travel documents, and personal identification documents; and

12.    All evidence showing the identity of the person(s) who used each of the Accounts.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

NOTHING MORE AFTER THIS LINE

HKS   9/8/2020

AO 93 (Rev. 11/13) Search and Seizure Warrant

# United States District Court
### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

The Premises Known as **19 Crabapple Lane, Lancaster, New York**

Case No. 20-MJ- 125-1

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Western District of New York *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-1, which is attached hereto and incorporated by reference herein

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
See Attachment B-1, which is attached hereto and incorporated by reference herein,

All of which are evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1014, 1343, 1344, 1349, and 1957, and all of which are more particularly described in the application for this warrant which is incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____September 22, 2020_____
                                                                                  *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. H. Kenneth Schroeder, Jr.
                                                                                                       *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30).*     ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   ___September 8, 2020___    4:51 p.m.   ___[signature]___
                                                                           *Judge's signature*

City and State:  __Buffalo, New York__               HONORABLE H. KENNETH SCHROEDER, JR.
                                                                   UNITED STATES MAGISTRATE JUDGE
                                                                   *Printed name and Title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:   20-mj-125-1 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken and name of any person(s) seized: | | |

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*


_____
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant

# United States District Court

### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

The Premises Known as **310 Adams Street, Buffalo, New York**

Case No. 20-MJ- 125-2

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Western District of New York *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, which is attached hereto and incorporated by reference herein

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B-1, which is attached hereto and incorporated by reference herein,

All of which are evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1014, 1343, 1344, 1349, and 1957, and all of which are more particularly described in the application for this warrant which is incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before ___September 22, 2020___
*(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. H. Kenneth Schroeder, Jr.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for ____ days *(not to exceed 30).*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    ___September 8, 2020___ 4:52 p.m

*Judge's signature*

City and State:  __Buffalo, New York__

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: 20-mj-125-2 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken and name of any person(s) seized: | | |

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant

# United States District Court
### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

The Person of **Larry D. Jordan II**

Case No. 20-MJ- 125-3

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Western District of New York *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, which is attached hereto and incorporated by reference herein

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B-1, which is attached hereto and incorporated by reference herein,

All of which are evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1014, 1343, 1344, 1349, and 1957, and all of which are more particularly described in the application for this warrant which is incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____September 22, 2020_____
*(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. H. Kenneth Schroeder, Jr.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for ____ days *(not to exceed 30).*     ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   ___September 8, 2020___  5:54 p.m..

*Judge's signature*

City and State:   _Buffalo, New York_

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| | | |
|---|---|---|
| **Return** | | |
| Case No.: 20-mj-125-3 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant

# United States District Court
### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

Information Associated with Accounts:
**Larry.jordan@5stems.com** and
**Accounting @5stems.com**,
That are Stored at Premises Owned, Maintained, Controlled,
or Operated by Zoho Corporation.

Case No. 20-MJ- 125-5

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of California, *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-5, which is attached hereto and incorporated by reference herein

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
See Attachment B-2, which is attached hereto and incorporated by reference herein,

All of which are evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1014, 1343, 1344, 1349, and 1957, and all of which are more particularly described in the application for this warrant which is incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____September 22, 2020_____
*(not to exceed 14 days)*

☒  in the daytime 6:00 a.m. to 10:00 p.m.     ☐  at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. H. Kenneth Schroeder, Jr.
*(United States Magistrate Judge)*

☐  Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐  for _____ days *(not to exceed 30).*     ☐  until, the facts justifying, the later specific date of _____.

Date and time issued:  ___September 8, 2020___  5:56 p.m.

_____
*Judge's signature*

City and State:  __Buffalo, New York__

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: 20-mj-125-5 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____


                                            _____
                                                   *Executing officer's signature*


                                            _____
                                                    *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant

# United States District Court
### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

The Person of **Sutukh El, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington**

Case No. 20-MJ- 125-4

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Western District of New York *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-4, which is attached hereto and incorporated by reference herein

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B-1, which is attached hereto and incorporated by reference herein,

All of which are evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1014, 1343, 1344, 1349, and 1957, and all of which are more particularly described in the application for this warrant which is incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____September 22, 2020_____
*(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. H. Kenneth Schroeder, Jr.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30).*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   _____September 8, 2020_____ 4:57 p.m.   _____
*Judge's signature*

City and State:  _Buffalo, New York_      HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: 20-mj-125-4 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*


_____
*Printed name and title*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

In the Matter of the Search of:
The Premises Known as **19 Crabapple Lane, Lancaster, New York**;
The Premises Known as **310 Adams Street, Buffalo, New York**;
The Person of **Curtis D. Jordan II**;
The Person of **Sutukh El, a/k/a Curtis Jordan, a/k/a Hugo Hurt, a/k/a Hugo Hurtington**; and
Information Associated with Accounts:                    20-MJ- 125
    **Larry.jordan@5stems.com** and              **FILDER UNDER SEAL**
    **Accounting @5stems.com**,
    That are Stored at Premises Owned, Maintained, Controlled,
or Operated by Zoho Corporation.


_____

### **ORDER**

Pursuant to Rule 41(d) of the Local Rules of Criminal Procedure for the Western

District of New York, and for good cause shown, the Search Warrants, Search Warrant

Application, Search Warrant Affidavit, and inventory returns shall remain under seal until

further order of the Court.

**NOW,** upon the request of the government, it is hereby

**ORDERED** that this matter will remain sealed until further order of the Court.


DATED:   Buffalo, New York, September ____8____, 2020

_____
HON. H. KENNETH SCHROEDER, JR.
United States Magistrate Judge